2051

Ray F. LYLES, Respondent v. QUANTUM CHEMICAL CO. (EMERY), Employer, and The Aetna Casualty & Surety Company, Carrier, Appellants.

(434 S.E. (2d) 292)

Court of Appeals

---

*Jack D. Griffeth, Love, Thornton, Arnold & Thomason,* Greenville, *for appellants.*

*William H. Ehlies*, Greenville, *for respondent.*

Heard May 19, 1993; Decided July 12, 1993.

Reh. Den. Sept 8, 1993.

CURETON, Judge:

Ray F. Lyles filed a claim with the South Carolina Workers' Compensation Commission, alleging he was totally and permanently disabled as a result of a work-related injury to his back. The hearing commissioner found Lyles had lost 50% or more of the use of his back, rendering him totally and permanently disabled and entitling him to benefits pursuant to S.C. Code Ann. § 42–9–30(19). The full commission and the circuit court affirmed. On appeal, Lyle's employer, Quantum Chemical Co., and Quantum's insurance carrier, Aetna Casualty & Surety Company, assert the circuit court erred in affirming the commission's award pursuant to the authority of § 42–9–30(19) (1976). We affirm.

Lyles worked as a laborer with Quantum. At the hearing before the commissioner, Lyles testified he had sharp pains and his back "popped" while moving a 450-pound drum of chemicals. Despite three operations to his back, he stated he can't twist his body, bend over, run, sit for prolonged periods, perform manual labor, or work in his yard, without severe pain. He testified that despite pain, he is able to work because he alternates three days on the job with three days at home, where he is able to do whatever is necessary to relieve the pain.

Lyles was promoted in 1987 and after his second surgery. He testified if he lost his supervisor's job, he would find it difficult to find another job because all entry-level positions require manual labor.

As a laborer, his annual base salary was $19,000, excluding overtime. His annual salary at the time of the hearing was 34,230.

Bernard Korty, Quantum's plant manager, testified Lyles has complained of pain and has stood during meetings to alleviate his pain. Although Korty does not work directly with Lyles, Korty has seen the claimant bend and stoop in doing his job since his accident. He stated Lyles was promoted because of his ability, not his injury, and Lyle's performance has

been proficient and above average.

Quantum usually identifies and promotes supervisors from within the company. New employees begin at entry level, which involves manual labor. Quantum does not guarantee an employee a lifetime job, and Lyles does not have an employment contract.

At his deposition, Dr. Littlepage, the neurosurgeon who performed three operations on Lyle's back, testified Lyle's suffers from spondylolisthesis, a shifting forward or misalignment of the fourth lumbar vertebrae. Inasmuch as Lyles had no symptoms prior to the injury, Littlepage opined the surgery was necessitated by the injury, not by a possible pre-existing condition, and even if the condition pre-existed, it was exacerbated or aggravated by the injury.[1] He testified Lyle's symptoms were consistent with his injury and despite three surgeries to relieve the pressure on nerves and to fuse vertebrae, Lyle's condition may progress and require additional surgery. Littlepage rated Lyle's "total impairment to the whole body" at 35%.

The commissioner found Lyle's injury was work-related. He observed Lyles did not have an injury to his back and was able to work without restriction prior to August 22, 1985, and that Littlepage associated Lyle's condition "to a reasonable medical certainty" with the accident. The commissioner also found Lyles was impaired 50% or more in the use of his back. He noted:

> a 35% impairment to the whole body is equal to 175 weeks and 175 weeks is equal to 58% of the back. The only injury with which this case is concerned [about] is the low[er] back. Although the Commission is not equating 35% of the whole man to 58% of the back, it is significant that the overall rating given by [Littlejohn] is 175 weeks.

The commissioner concluded Lyles was totally and permanently disabled and entitled to compensation and medical care under S.C. Code Ann. § 42-9-30(19) and *Bateman v. Town &*

---

[1] Although Quantum asserts Lyles suffered from spondylolisthesis prior to his injury, it does not challenge Littlepage's conclusion that if the condition pre-existed, it was aggravated by the injury.

*Country Furniture Co.*, 287 S.C. 158, 336 S.E.2d 890 (Ct. App. 1985).[2]

The appellants contended Lyles cannot be totally and permanently disabled because he continues to work full-time, and regardless of his alleged permanent and total disability, he must demonstrate a loss of earnings to qualify for the payment of benefits, citing S.C. Code Ann. § 42-9-10.

The commissioner noted Lyles cannot do the type of work he was doing at the time of the accident, and under *Bateman* and § 42-9-30(19), compensation is based on the character of the injury, not loss of earnings as required by § 49-2-10.

The full commission affirmed with two members voting with the single commissioner. Three commissioners found Lyles had suffered a 45% disability to the back and voted to affirm with amendment.

## I.

The appellants argue Lyles is not entitled to benefits under S.C. Code Ann. § 42-9-30 because there was insufficient evidence to establish he had suffered a greater than 50% impairment to his back. They contend the commissioner erred by converting Littlepage's "whole man" impairment rating of 35% to an impairment rating for the back of 58%.

---

[2] S.C. Code Ann. 42-9-30 provides in pertinent part:

> In cases included in the following schedule, the disability in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified therein, to wit:

> \* \* \* \* \* \*

> (19) For the total loss of the use of the back, sixty-six and two-thirds percent of the average weekly wages during three hundred weeks. The compensation for partial loss of use of the back shall be such proportions of the periods of payment herein provided for total loss as such partial loss bears to total loss, *except that in cases where there is fifty percent or more loss of use of the back, in which event the injured employee shall be deemed to have suffered total and permanent disability and compensated therefor under paragraph two of § 42-9-10* (emphasis added).

"[A] claimant who suffers a 50% or more loss of use of the back need not show a loss of earning capacity to recover permanent total disability under § 42-9-10 (1976). [Because ] such an injury is included in the list of specific disabilities found in section 42-9-30 (1976), it is an exception to the general rule under section 42-9-10 requiring a claimant to show a loss of earning capacity." *Bateman*, 287 S.C. at 160, 336 S.E. (2d) at 891; *see Wynn v. Peoples Natural Gas Co. of S.C.*, 238 S.C., 1, 11-12, 118 S.E. (2d) 812, 817-18 (1961).

In reviewing the decision of the commission, we will not set aside its findings unless they are not supported by substantial evidence or they are controlled by an error of law. *Lail v. Georgia-Pacific Corp.*, 285 S.C. 234, 235, 328 S.E. (2d) 911, 912 (1985). A finding is supported by substantial evidence "unless there is no reasonable probability that the facts could be as related by a witness upon whose testimony the finding was based." A finding upon which reasonable men might differ will not be set aside. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 136, 276 S.E. (2d) 304, 307 (1981).

We agree with the circuit court that the commissioner did not "convert" Littlepage's "whole man" impairment rating to a back impairment rating. Our review of the commissioner's order suggests he considered all expert and lay testimony, the credibility of these witnesses, and other medical evidence, in finding that Lyles suffered more than a 50% impairment to his back.

Although an impairment rating may not rest on speculation or conjecture, it need not be shown by mathematical precision and it may rely on lay testimony. *Linen v. Ruscon Constr. Co.*, 286 S.C. 67, 68, 332 S.E. (2d) 211, 212 (1985) (although expert testimony suggested the claimant suffered from a 20-30% impairment to his back, testimony of claimant and vocational expert was substantial evidence the claimant's impairment exceeded 50%). The commission may find a degree of disability different from that suggested by expert testimony. *Cropf v. Pantry, Inc.*, 289 S.C. 106, 108, 344 S.E. (2d) 879, 881 (Ct.App.1986) (this Court reversed the circuit court and affirmed the commission's finding of a 30% impairment to the back although physicians had testified the claimant was not impaired and a chiropractor had testified to a 15% impairment).

Lyles testified at length to the character and extent of his back injury, the restrictions the injury has placed on his physical activities, and his inability to do the type of work he did at the time of injury. Although the testimony of Korty and another witness suggests Lyles is not impaired by his back injury, we conclude there is substantial evidence Lyles has suffered more than a 50% impairment to his back.

## II.

The appellants contend the circuit court erred in applying S.C. Code Ann. § 42-9-30, which presumes Lyles has suffered a loss in earning capacity, because his injury has not affected his job performance. They argue although Lyles may be impaired by his back injury, his job performance demonstrates he is not permanently and totally disabled. They urge this Court to reconsider *Bateman*, which allows the payment of total and permanent benefits to a claimant who has not lost earnings.[3]

Under § 42-9-30, a claimant may establish permanent and total disability by demonstrating impairment to a scheduled body member. Compensation is based on the character and extent of injury and not whether the claimant has lost earnings or is otherwise employable in another occupation. In including specific body members within this schedule, the legislature presumes a claimant has lost earning capacity to a degree which corresponds to the claimant's degree of impairment. *See Bateman*, 287 S.C. at 160, 336 S.E. (2d) at 89; *McCollum v. Singer Co.*, 300 S.C. 103, 107-08, 386 S.E. (2d) 471, 474 (Ct. App. 1989).

*In Fields v. Owens Corning Fiberglas*, 301 S.C. 554, 393 S.E. (2d) 172, 173 (1990), our Supreme Court observed:

> It is well-settled that an award under the general disability statutes must be predicated upon a showing of a loss of earning capacity, whereas an award under the scheduled loss statute does not require such a showing. *Roper v. Kimbrell's of Greenville, Inc.*, 231 S.C. 453, 99 S.E. (2d) 52 (1957).

Accordingly, we decline to disregard the command of S.C. Code Ann. § 42-9-30 or to reconsider *Bateman*.

Affirmed.

SHAW AND GOOLSBY, JJ., concur

---

[3] They contend that an objective of the Worker's Compensation Act is to return workers to full, useful, and productive jobs, which has occurred in this case.